# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DIANE MARIE LANDRY** | * | **CIVIL ACTION NO. 11-1375** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Diane Marie Landry, born August 7, 1957, filed an application for a period of disability and disability insurance benefits on August 3, 2009, alleging disability as of August 31, 2006, due to breast tumors, neck and back problems, knee problems, and stomach problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. George Raymond Williams dated March 3, 2005**. Claimant complained of back pain, which increased with standing or sitting a lot. (Tr. 192).  She smoked one to two cigarettes per day.

On examination, claimant had some tenderness in the paraspinal musculature.  (Tr. 193).  She had full range of motion of the lower extremities. The spine appeared to be clinically straight with no evidence of dysraphism. Neurologically, she was intact, with 5/5 motor strength.

An MRI showed a small central disc bulge at L5-S1 as well as L4-L5, and disc dessication and decreased disc height at L5-S1.

Dr. Williams opined that claimant would benefit from physical therapy two times a week for six weeks.  He stated that he would see claimant in four weeks for re-evaluation.

**(2) Consultative Internal Medicine Report from Dr. Herman Toliver dated October 17, 2009**.  Claimant complained of back problems, breast tumors, and stomach and knee problems.  (Tr. 199).  She reported that she could not work for the past five to 10 years due to back problems.  Regarding her knee problem,

she stated that both knees locked up on her, more on the right, and that she had

occasional swelling, popping, and giving out.  She had had two surgeries for

removal of non-cancerous breast cysts, and one for removal of an orange-sized

non-cancerous stomach tumor.

Claimant reported that she could dress and feed herself, stand for five

minutes at a time, walk 100 feet on level ground, sit for five minutes at a time, lift

five pounds at a time, and drive for 10 minutes.  (Tr. 199-200).  She could shop,

cook, and do the dishes.  (Tr. 200).

On examination, claimant was 67 inches tall and weighed 197 pounds.  Her

blood pressure was 136/90.  She had normal ambulation, getting off the exam

table, getting up and out of the chair, and ability to dress and undress herself.

On spine and extremities exam, claimant had no paraspinal muscle

tenderness or spasms.  (Tr. 201).  Her pulses were 2+ throughout.  She had no

cyanosis, clubbing, edema, or gait.  Grip strength was 5/5 bilaterally.

Range of motion in the elbow, forearms, wrists, shoulders, and cervical

spine was normal.  Lumbar spine flexion was 40/90, lateral flexion was 15/25, and

extension was 15/25.  Hip flexion was normal.  Knee flexion was 100/150 on the

right and 120/150 on the left.  Her left ankle was normal.

Straight leg raising test was normal.  Claimant did have to roll to her side in order to lie back on the table.  She could not walk on her heels or toes.  She could squat and perform heel-to-toe.

Neurologically, claimant's mentation was normal.  She had 5/5 motor strength in the upper and lower extremities.  She had no unilateral atrophy or sensory deficits.

X-rays were negative for fracture or dislocation.  Knee views were negative for fracture or dislocation.

Dr. Toliver's impression was back problems with lumbar spine flexion issues.  He did not see it to be inhibiting as far as claimant's movement was concerned.  Regarding her knees, he did not see any signs of problems.  (Tr. 202). There were fibrocystic changes of no consequences in her breasts.  While there was unusual presentation of claimant's having an orange-like mass in her stomach, it was excised and not found to be cancerous, and there was no need for further work-up.  It did sound like she was having any severe abdominal pain, inability to tolerate food, or anything otherwise.

Dr. Toliver opined that claimant would be able to walk or stand for prolonged period of time with frequent breaks in between.  He thought that she

could probably lift between five and 10 pounds at a time.  She had no current limitations with fingering, grasping, or fine dexterous movements.

**(3) Physical Residual Functional Capacity ("RFC") Assessment dated December 2, 2009**.  The examiner found that claimant could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk or sit about six hours in an eight-hour workday, and had unlimited push/pull ability.  (Tr. 204).  She had occasional postural limitations.  (Tr. 205).

**(4) Records from Doctor's Hospital dated April 12, 2010**.  Claimant complained of back pain, headaches, and dizziness after a motor vehicle accident the previous week.  (Tr. 213-15).  The impression was a lumbosacral strain/sprain and acute sciatica.  (Tr. 214).  She was prescribed Flexeril, Medrol dose pack and Lortab.  (Tr. 217).

**(5) Records from Dr. Luris Sanchez dated January 25, 2005 to April 27, 2010**.  On January 25, 2005, claimant was seen for allergic rhinitis and low back pain.  (Tr. 239).  An MRI showed a mild central disc bulge at L4-L5 and L5-S1 with no spinal stenosis or neural foraminal narrowing.  (Tr. 240).

On April 15, 2012, claimant was seen for neck stiffness following a motor vehicle accident in which she was hit from behind.  (Tr. 223).  The assessment was

cervical/lumbar radiculopathy with muscle spasms.  She was prescribed Flexeril and Ultram.

    **(6) Report from OGH Imaging dated June 7, 2010**.  An MRI showed broad-based disc bulges at L4-5 and L5-S1 with a small central disc protrusion at L4-5 mildly effacing the ventral thecal sac, and slight neural foraminal encroachment bilaterally at L4-5 and L5-S1 with associated ligamentum flavum and facet hypertrophy.  (Tr. 243).  The cervical MRI showed broad-based disc bulges with small central disc protrusions at C4-5 and C5-6 mildly effacing the ventral thecal sac, and a mild broad-based disc bulge and C6-7 minimally indenting the ventral thecal sac.  (Tr. 244).

    **(7) Records from Dr. Williams dated June 17, 2010 to August 31, 2010**.  Dr. Williams checked on a Work Status report that "Patient is Unable to Work Pending Treatment."  (Tr. 247).  In the Medical Source Statement of Ability to do Work-Related Activities (Physical), he checked that she could lift/carry less than 10 pounds occasionally and frequently; stand/walk less than two hours in an eight-hour day; sit less than six hours in an eight-hour day, and was limited as to pushing/pulling.  (Tr. 248-49).  He found that she could perform all postural activities frequently, except that she was limited to occasional balancing.  (Tr. 250).  He determined that claimant could frequently reach in all directions and

6

handle, but was limited fingering and feeling occasionally. (Tr. 251). She had no environmental limitations. (Tr. 252).

Claimant underwent physical therapy from August 2, 2010 through August 31, 2010. (Tr. 254-78).[1] At the last visit, she was improving and was pleased with her progress. (Tr. 277).

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on May 24, 2010, claimant was 52 years old. (Tr. 29). She had graduated from high school. (Tr. 30). She testified that she was 5 feet 7 inches tall and weighed 200 pounds.

Claimant testified that she had last worked as an office assistant for four months. (Tr. 32). She said that she had also worked for a tax group for a month in 2009, but was let go. (Tr. 35). She also had past work experience as a jewelry salesperson and a clothing store manager. (Tr. 37-39).

Regarding complaints, claimant reported that she had stopped working because she had gotten to a point where she hardly move. (Tr. 31). She said that

---

[1]Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Leval v. Commissioner of Social Sec.*, 2012 WL 1123839, *1 (W.D. La. March 13, 2012).

she had been in a car accident on April 12, 2010, which had resulted in back problems.  (Tr. 41, 43).

Additionally, claimant complained of having surgery in her breast, which caused her arms to swell.  (Tr. 49-50).  She stated that she had memory and concentration problems.  (Tr. 52).  She also said that she needed to take a lot of breaks during the day.  (Tr. 54).

As to limitations, claimant testified stated that she could sit for around 10 minutes before needing to move around, and walk about 15 minutes.  (Tr. 47). She stated that she could stand for about 15 minutes, then needed to sit.  She said that she could lift and carry maybe five pounds.  She also reported that she could not climb stairs, stoop, or bend.  (Tr. 53).

Regarding medications, claimant stated that she saw Dr. Sanchez for medication refills, including Lortab, Ultram and Flexeril.  (Tr. 40).  She testified that her medications made her irritable,  drowsy, and nauseous.  (Tr. 48, 51-52).

Regarding activities, claimant testified that she drove very little because of back problems.  (Tr. 30).  She stated that she grocery shopped and cooked.[2]  (Tr. 48).  She said that she attended church two to three times a week.

---

[2]Claimant's Function Report indicated that she did laundry, ironed, mopped, and vacuumed.  (Tr. 160).

**(9) Administrative Hearing Testimony of Thomas G. Mungall, III,**

**Vocational Expert ("VE")**.  Mr. Mungall described claimant's past work as a

department manager as medium with an SVP of 7; jewelry salesperson as light

with an SVP of 5, and receptionist (as she had performed it) as light, with an SVP

of 4.  (Tr. 58).  The ALJ posed a hypothetical in which she asked the VE to

assume a claimant of the same age, education and work experience; who could lift

50 pounds occasionally and 25 pounds frequently; stand, walk, or sit for six hours

of an eight-hour day, and occasionally perform all posturals.  (Tr. 59).  In

response, Mr. Mungall testified that she could do all of her past work.

When the ALJ changed the hypothetical to assume a claimant who could

only lift and carry 20 pounds occasionally and 10 pounds frequently, the VE

testified that claimant could perform her past jobs as a jewelry salesperson and

receptionist.  (Tr. 59-60).  The ALJ then added a limitation to lifting no more than

10 pounds, to which Mr. Mungall responded that claimant had transferable skills

to other sedentary work, including receptionist, of which there were 1,100,790

jobs nationally and 16,630 statewide; telephone sales representative, of which

there were 354,000 jobs nationally and 1,560 statewide, and data entry clerk, of

which there were 286,540 nationally and 2,880 statewide.  (Tr. 61-62).  He further

testified that these jobs could be performed if claimant had to alternate sitting and

standing every 15 to 30 minutes, but might affect the telephone solicitor job.  (Tr. 62-63).

Finally, the ALJ posed a hypothetical in which she asked the VE to assume a claimant who, because of back pain and side effects from medications, had to alternate between sitting/standing and lying down intermittently throughout an eight-hour day at unscheduled times.  (Tr. 63).  In response, Mr. Mungall testified that she would not be able to perform any work.

**(10) The ALJ's Findings**.  Claimant argues that: (1) the ALJ erred in failing to find her disabled and entitled to benefits, or, alternatively, in failing to find that she was disabled for a time and entitled to a closed period of disability benefits; (2) the ALJ erred in finding that her testimony and complaints of pain were not credible, and (3) the ALJ erred in failing to give proper weight to the opinions of her treating physician, Dr. Williams.

First, claimant asserts that the ALJ erred in failing to give greater weight to Dr. Williams' opinion that claimant could not maintain gainful employment.  It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*,

10

38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131

L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a

patient's impairment will be given controlling weight if it is "well supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with ... other substantial evidence." *Newton,* 209 F.3d at 455 (citing

20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician

rule includes disregarding statements by the treating physician that are brief and

conclusory, not supported by medically accepted clinical laboratory diagnostic

techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566;

*Greenspan*, 38 F.3d at 237.

Claimant argues that the ALJ "misinterpreted" Dr. Williams' work status

report as a legal conclusion. The ALJ gave "some" weight to Dr. Williams'

opinion that claimant was "unable to work pending treatment." However, she

noted that his statement regarding claimant's inability to work was conclusory and

a legal conclusion which was reserved to the Commissioner. (Tr. 16). *See Frank*

*v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 1527(e)(1))

(among the opinions by treating doctors that have no special significance are

determinations that an applicant is "disabled" or "unable to work." These

determinations are legal conclusions that the regulation describes as "reserved to

11

the Commissioner.").  The ALJ's position is consistent with the law of the Fifth Circuit; therefore, it is entitled to deference.

The undersigned further notes that Dr. Williams opined that claimant was unable to work "pending treatment."  (Tr. 247).  He did not find, as required by the regulations for disability, that her condition was expected to last for at least 12 months.  20 C.F.R. §404.1505(a) ("[t]he law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").  Thus, the ALJ's finding that claimant was not disabled is entitled to deference.

Next, claimant argues that the ALJ erred in finding that jobs existed in substantial numbers which she could perform.  In support of the ALJ's finding, she gave "great weight" to the opinion of Dr. Toliver, who personally examined claimant, that claimant would be able to walk or stand for prolonged period of time with frequent breaks in between, could probably lift between five and 10 pounds at a time, and had no current limitations with fingering, grasping, or fine dexterous movements.  (Tr. 16, 202).  This was appropriate under the Social Security Regulations.  20 C.F.R. § 416.927(c)(1) ("[g]enerally, we give more

12

weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). With these limitations, the vocational expert was able to identify the jobs of receptionist, telemarketer, and data entry keyer. (Tr. 18, 62). As the ALJ's opinion is supported by the evidence, it is entitled to deference.

Additionally, the ALJ's finding as to claimant's ability to work is supported by claimant's activities. Claimant testified that she grocery shopped, cooked, and attended church two to three times a week. (Tr. 48). The Function Report indicated that she also did laundry, ironed, mopped, and vacuumed. (Tr. 160). It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Accordingly, the ALJ's decision as to claimant's disability status is entitled to deference.

The undersigned observes that claimant complained at the hearing of side effects from her medications, including irritability, drowsiness, and nausea. (Tr. 48, 51-52). However, the record does not indicate that claimant reported these side effects to her physicians. *See Salazar v. Chater*, 1995 WL 783347, *5 (5th Cir. 1995) ("[i]t is logical to assume that if the claimant were suffering significantly from any side affects [sic], the claimant would have complained to

his treating physician, yet he has not done so."); *Wells v. Astrue*, 2009 WL 2447819 (M.D. La. Aug. 10, 2009); *Conerly v. Commissioner of Social Sec.*, 2008 WL 5249237 (W.D. La. Nov. 5, 2008).  Additionally, the decision reflects that the ALJ specifically considered the effects of claimant's medications in evaluating her complaints under 20 C.F.R. § 404.1529 and SSR 96-7p.  (Tr. 14).  Thus, this argument lacks merit.

Next, claimant asserts that there has been no determination that she could hold whatever job she finds for a significant period of time, citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  However, since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank*, 326 F.3d at 618.  As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms.  For example, if [plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination.  **At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the**

> **claimant from holding a job for a significant period of time**.  An
> ALJ may explore this factual predicate in connection with the
> claimant's physical diagnosis as well as in the ability-to-work
> determination.  Usually, the issue of whether the claimant can
> maintain employment for a significant period of time will be
> subsumed in the analysis regarding the claimant's ability to obtain
> employment.  Nevertheless, an occasion may arise, as in *Watson*,
> where the medical impairment, and the symptoms thereof, is of such
> a nature that separate consideration of whether the claimant is
> capable of maintaining employment is required.

(emphasis added).  *Id*. at 619.

Here, claimant has not demonstrated that her symptoms were of sufficient frequency or severity to prevent her from holding a job for a significant period of time as required by *Watson*.  As the ALJ found, while claimant's spinal disorder could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with her RFC.  (Tr. 17).  The record reflects that despite her complaints, claimant grocery shopped, cooked, attended church two to three times a week, did laundry, ironed, mopped, and vacuumed.  (Tr. 48, 160).

Further, the objective medical evidence does not support a finding of disabling pain.  The most recent lumbar MRI showed broad-based disc bulges at L4-5 and L5-S1 with a *small* central disc protrusion at L4-5 *mildly* effacing the

15

ventral thecal sac, and *slight* neural foraminal encroachment bilaterally at L4-5 and L5-S1 with associated ligamentum flavum and facet hypertrophy.  (emphasis added).  (Tr. 243).  The cervical MRI showed broad-based disc bulges with *small* central disc protrusions at C4-5 and C5-6 *mildly* effacing the ventral thecal sac, and a *mild* broad-based disc bulge and C6-7 *minimally* indenting the ventral thecal sac.  (Tr. 244).  These findings do not support claimant's assertion of a disabling spinal condition.

The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  As the ALJ's findings regarding disability are supported by substantial evidence, claimant's argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are

16

directed to furnish a courtesy copy of any objections or responses to the District

Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed August 28, 2012, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent:  TLM, BC, LJ
On: 8-28-2012
By:  MBD

17